IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Wayne Property Acquisition, Inc. | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 254 C.D. 2020 |
| | : | |
| Board of Commissioners of the | : | |
| Township of Radnor and Bradley | : | |
| Mortensen, Susan Stern, Warren Ayres | : | |
| and Susan Ayres | : | |
| | : | |
| Appeal of: Radnor Township Board | : | |
| of Commissioners | : | |
| | : | |
| Wayne Property Acquisition, Inc. | : | |
| | : | |
| v. | : | No. 279 C.D. 2020 |
| | : | |
| Board of Commissioners of Radnor | : | |
| Township and Bradley Mortensen, | : | |
| Susan Stern, Warren Ayres and | : | |
| Susan Ayres | : | |
| | : | |
| Appeal of: Bradley Mortensen, | : | |
| Susan Stern, Warren Ayres and | : | |
| Susan Ayres | : | Argued: June 23, 2022 |


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE LORI A. DUMAS, Judge

*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  August 7, 2023

        In these consolidated zoning cases, the Radnor Township Board of

Commissioners (Board) and Bradley Mortensen, Susan Stern, Warren Ayres, and

Susan Ayres (Intervenors) (collectively, Appellants) appeal from the January 30, 2020[1] order of the Court of Common Pleas of Delaware County (trial court), which sustained the land use appeal of Appellee Wayne Property Acquisition, Inc. (Wayne).

Wayne initially sought the Board's approval of a preliminary land development plan (Preliminary Plan or Plan) pursuant to which it sought to remove the existing buildings from two parcels of property in Radnor Township (Township), consolidate the parcels, and construct a new Wawa convenience store with accompanying gasoline sales. The Board denied approval of the Preliminary Plan, citing Wayne's non-compliance with multiple provisions of the Township's zoning ordinance (Zoning Ordinance)[2] and Subdivision and Land Development Ordinance (SALDO).[3] Wayne appealed the Board's decision to the trial court, which sustained the appeal. On appeal to this Court, Appellants argue that the trial court erred and abused its discretion in multiple respects. Upon review, we affirm in part, reverse in part, and remand for further proceedings.

## I.     FACTS AND PROCEDURAL HISTORY

The trial court did not supplement the record from the Board. The facts material to the instant appeals are not disputed and may be summarized as follows.

---

[1] The trial court's order is dated January 30, 2020, and was entered on the docket on January 31, 2020. (Reproduced Record at 0330a.) Citations to the Reproduced Record (R.R.) throughout this opinion omit the first two zeros from the cited page numbers.

[2] Township of Radnor, Delaware County, Pa. Zoning Ordinance, Ord. No. 1564 (1974), *as amended*, now codified at Chapter 280 of the Code of the Township of Radnor, §§ 280-1-280-168, available at https://ecode360.com/11078356 (last visited August 7, 2023).

[3] Township of Radnor, Delaware County, Pa. Subdivision and Land Development Ordinance, Ord. No. 83-19 (1983), *as amended*, now codified at Chapter 255 of the Code of the Township of Radnor, §§ 255-1-255-103, available at https://ecode360.com/11075882 (last visited August 7, 2023).

Wayne is a private company owned by the Karakelian Family. Wayne owns two adjacent parcels of property in the Township located at 302 and 306 East Lancaster Avenue, Wayne, Pennsylvania (the Property).[4] (R.R. at 0016a-18a.) The 302 East Lancaster Avenue parcel currently houses a Sunoco fuel station and automobile repair shop. *Id.* at 0017a. The 306 East Lancaster Avenue parcel houses a gasoline station and car wash. *Id.* The businesses on both parcels were developed in the 1950s or prior. *Id.* The Property is located in the Township's C-2 General Commercial zoning district (C-2 District). *Id.* at 0019a; 0153a. Wayne proposes to merge the two parcels into a single 1.71-acre parcel, remove all current structures, and construct and lease to Wawa a new retail convenience store with gasoline sales. *Id.* at 0129a-49a. The repair and car wash businesses will end. *Id.* at 0154a.

On April 6, 2018, Wayne's representatives met with the Township's Director of Community Development and Zoning Officer, Kevin Kochinski (Zoning Officer), and the Township's solicitor (Solicitor) to discuss Wayne's proposal and its compliance with the Zoning Ordinance. *Id.* at 0017a-18a. On April 16, 2018, Wayne's counsel sent a letter (Request Letter) to the Zoning Officer in which counsel requested "a determination letter indicating the compliance of the attached [Preliminary] Plan with the provisions of the [Zoning Ordinance]." *Id.* at 0152a. Counsel further requested that the Zoning Officer "provide what relief, if any, including the type of relief, is required from the provisions of the Zoning [Ordinance]." *Id.*[5]

---

[4] Wayne owns the 306 East Lancaster Avenue parcel. Gary and Connie Karakelian own the 302 East Lancaster Avenue parcel. (R.R. at 0016a-17a.) Because Wayne operates the businesses on both parcels and submitted the Preliminary Plan at issue, we refer to Wayne throughout as the owner and operator of the entire Property.

[5] The Request Letter briefly described Wayne's proposed Preliminary Plan as follows:
**(Footnote continued on next page…)**

3

On April 27, 2018, the Zoning Officer issued a letter replying to Wayne's request (Zoning Letter). *Id.* at 0153a. The Zoning Letter advised as follows:

1. The subject site is located in the C-2 [District].

2. Retail uses are permitted [by right] in the C-2 [D]istrict.

3. The [u]se provisions of [Zoning Ordinance] [s]ection 280-49.A requiring all uses to be completely enclosed within a building is an existing non-conformity[,] which is proposed to [be] reduced. Currently, the two (2) sites maintain[] 20 retail gas pumps. The proposed [Property] would contain 12 retail gas pumps.

4. The [u]se provision of [Zoning Ordinance] [s]ection 280-49.D requiring [that] no goods shall be displayed or offered for sale beyond the front lines of a building is an existing non-conformity[,] which is proposed to be reduced.

A thorough zoning review has not been completed. This opinion applies only to the issue noted above. [Wayne] is responsible for securing all other necessary permits and approvals[] as well as compliance with all applicable

---

302 E[ast] Lancaster Avenue and 306 E[ast] Lancaster Avenue are adjacent parcels located on the south side of Lancaster Avenue. 302 E[ast] Lancaster currently houses a full-service motor vehicle repair shop and the retail sale of gasoline.

306 E[ast] Lancaster Avenue is operated as a car wash and also includes the retail sale of gasoline. The owner of the lots intends to combine the lots into one lot and maintain a retail convenience store together with the retail sale of gasoline. The motor vehicle repair use and the car wash use will be discontinued.
. . . .

(R.R. at 0152a.)

4

> [m]unicipal [c]odes/[r]egulations. If you have any questions
> regarding this determination, please contact me.

*Id.* at 0153a. It is undisputed that the Zoning Letter was not published to the public.

After receiving the Zoning Letter, Wayne proceeded through the Preliminary Plan approval process. Wayne engaged professional engineers, held public meetings with neighbors and Township officials, prepared revised Plans, and obtained a traffic impact study. *Id.* at 0021a; 0258a. Wayne submitted the Preliminary Plan for approval on August 31, 2018. *Id.* at 0201a. Thereafter, during the review process, Wayne received numerous review letters from the Township and the Delaware County Planning Commission (County Planning Commission), none of which advised that the Preliminary Plan did not comply with the Zoning Ordinance. *Id.* at 0023a; 0155a-58a; 0168a-206a.[6] Wayne, through its engineer, sent letters to the Township addressing the issues raised in the review letters and submitted Plan revisions to eliminate the need for certain substantive waivers to the Township's SALDO. *Id.* at 0211a; 0224a; 0242a. The Board scheduled an approval hearing for June 4, 2019.

Prior to the hearing, on March 28, 2019, Solicitor issued a memorandum to the Radnor Township Planning Commission (Township Planning Commission) in which it advised that the Zoning Officer's opinion in the Zoning Letter was erroneous and that the Preliminary Plan would require relief from the Township's Zoning Hearing Board (ZHB). *Id.* at 0265a.[7] In pertinent part, the memorandum advised as follows:

---

[6] The County Planning Commission, after reviewing the proposed Preliminary Plan, concluded that the Plan "appear[ed] to comply with the C-2 [D]istrict [Zoning Ordinance]" provisions and recommended that the Plan "proceed to final" preparation. (R.R. at 0156a; 0157a.)

[7] Counsel for several neighboring landowners submitted a letter to the Zoning Officer in which counsel advised that the Preliminary Plan would require relief from the ZHB, namely, a special exception to permit gasoline sales and a variance from the Zoning Ordinance's rear yard requirements for corner lots. (R.R. at 0262a-64a.)

5

In his preliminary review, the [Z]oning [O]fficer stated the following:

    a. Retail uses are permitted in the C-2 [District];

    b. The [Z]oning [O]rdinance requires all uses in the C-2 [D]istrict to be located completely within an enclosed structure, but the outdoor gas pumps are an existing nonconformity which is being reduced; and

    c. The [Z]oning [O]rdinance requires that no goods shall be displayed or offered for sale beyond the front lines of a building, but this, too, is an existing non-conformity.

The [Zoning O]rdinance does not address convenience stores, with or without gasoline sales, but we agree with the [Z]oning [O]fficer's classification of a convenience store as a retail use. [The Zoning Officer] correctly notes that all uses in the C-2 [ ] District must be located within an enclosed building ([Zoning Ordinance] § 280-49.A and § 280-53) so we know that a convenience store with gas pumps would not be permitted by right in the C-2 [ ]District.

**Nonconformities**

The question then becomes the role that nonconformities play in an analysis of this [P]lan. Township records show that the property at 302 [East] Lancaster Avenue registered as a nonconforming use in 1956, in this case, an ESSO station.

[Zoning Ordinance] Article XX, § 280-101 is the subject of this memo and the basis of our legal opinion to you. Pennsylvania law and [section] 280-101 distinguish between nonconforming uses and nonconforming structures.

The [Z]oning [O]fficer notes that the gas pumps, which are not enclosed within a building, are an existing nonconformity. The preliminary zoning review does not clarify whether the

6

nonconformity is a nonconforming structure or a nonconforming use.

If the nonconformity is a structural nonconformity, [section] 280-101.B allows that only nonconforming structures destroyed by fire or other casualty may be reconstructed; there is no provision to allow the reconstruction of nonconforming structures if they are destroyed voluntarily. Voluntary destruction of a building is an abandonment of the building. If the nonconformity to which the preliminary review refers is a nonconforming structure, [Wayne] must seek variance relief from the [ZHB] to pursue this application[.]

If the unenclosed gas pumps are a nonconforming use, Zoning Ordinance [s]ection 280-101.A states that "[a]ny change in nonresidential occupancy shall be deemed to be a change of use for purposes of [section] 280-101.A(1). [Section] 280-101.A(1) requires that a "nonconforming use may be changed to another nonconforming use only upon determination by the ZHB, after public hearing, that the proposed new use will be no more detrimental to its neighborhood and surroundings than is the use it is to replace."

The last prong of the preliminary zoning review notes that Zoning Ordinance [s]ection 280-49.D requires that "[]no goods shall be displayed or offered for sale beyond the front lines of a building[,"] but states that the sale of goods beyond the front line of a building is an existing nonconformity. This nonconformity is a dimensional nonconformity, which ceases when the buildings on the [P]roperty are razed. Variance relief would be required to allow the sale of goods beyond the front line of a building.

The Zoning Ordinance and Pennsylvania law direct that [ZHB] relief is required in order for this application to proceed. [Wayne] can offer an additional extension while the relief is pursued. The current extension run[s] only until May 13, [2019,] so if [Wayne] declines to provide an additional

7

extension, it is our recommendation that the [Township] Planning Commission recommends denial of this plan.

(R.R. at 0266a-67a) (emphasis omitted).

At a meeting on April 1, 2019, the Township Planning Commission recommended to the Board that Wayne's application for approval of its Preliminary Plan be denied. On June 10, 2019, the Board held a hearing and denied approval. The Board, by counsel, issued a written denial to Wayne's counsel on June 13, 2019 (Denial Letter). *Id.* at 0104a-05a; 0323a-25a.[8] Wayne filed a land use appeal to the trial court

_____

[8] The Board's written denial identified the following items of noncompliance with the Zoning Ordinance and SALDO:

1. Failure to receive [ZHB] approval as required by [s]ection 280-101[.]A[ ](1) of the Township's [Z]oning [O]rdinance which requires any change in nonresidential occupancy to receive a special exception from the [ZHB].

2. Non-compliance with [s]ection 280-49.D of the [ ] [Z]oning [O]rdinance which prohibits goods to be displayed beyond the front lines of a building.

3. Non-compliance with [s]ections 280-4[.B] and 280-52[.E] of the [ ] [Z]oning [O]rdinance regarding encroachment into the rear yard setback requirements for a corner lot.

4. Non-compliance with [s]ections 280-112.J[ ] of the [ ] [Z]oning [O]rdinance due to the proposed parking areas in steep slopes of 20% or greater.

5. Noncompliance with the following [SALDO] requirements:

   a. Section 255-20.B(1)(n) which requires significant man[-]made features within 500 feet of the site to be shown on the plans.

   b. Section[s] 255-29.A(12)(c) and 255-30.C with respect to width of entrance and exit drives.

   c. Section 255-38.H regarding the listing of all proposed trees on the plan.

**(Footnote continued on next page…)**

on July 10, 2019, and Intervenors were permitted to intervene. The trial court did not receive additional evidence, and the parties submitted proposed findings of fact, conclusions of law, and briefs. The trial court ultimately sustained Wayne's land use appeal, approved the Preliminary Plan, and directed Wayne to submit a final plan that complied with the SALDO.[9]

After the Board and Intervenors appealed to this Court, the trial court set forth its reasoning in an opinion pursuant to Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 1925(a). Therein, the trial court concluded that (1) the Zoning Officer's

---

    d.  Section 255-20.B(1)(n) which requires surveys in all areas within 500 feet of the property line.

    e.  Section 255-20.B(5)(d)[2][a] which requires information regarding internal pedestrian circulation as part of the transportation impact study requirement.

    f.  Section 255-20.B(5)(d)[3] and [s]ection 255-6 which require a traffic study area of .5 miles and specific criteria for documenting existing traffic conditions.

    g.  Section 255-20.B(5)(d)[4] which requires the calculation of trip generation data in accordance with Attachment 4 of the [ ] [SALDO].

    h.  Section 255-20.B(5)(d)[5] which requires a dedicated 75-foot left turn lane for the westbound approach of Lancaster Avenue at the proposed access driveway during all study periods which the applicant has not shown on the Plans.

    i.  Section 255-20.B[(]5)(d)[6][a] which requires specific recommendations for remediation of all streets and intersections showing a Level of Service below C which the application has failed to address.

(R.R. at 0323a-24a.)

[9] In its January 30, 2020 order, the trial court incorporated Wayne's proposed findings of fact, conclusions of law, and brief. (Trial Ct. Order, 1/30/20, ¶ 3.) The trial court also made additional relevant findings independent of those submitted by Wayne. *Id.*, ¶¶ 2-6.

9

opinion in the Zoning Letter that the Preliminary Plan complied with the Zoning Ordinance was binding on the Board; (2) Wayne was not required to obtain a special exception under section 280-101.A of the Zoning Ordinance due to a change of occupancy; (3) the legal, nonconforming use of outside gasoline sales was not abandoned by Wayne and may continue on the Property as a legal, nonconforming use; (4) the Preliminary Plan substantially complied with the provisions of the Zoning Ordinance and SALDO; and (5) the Board acted in bad faith during the plan review process. (Trial Ct. Op. at 7-33.) The trial court further discussed certain substantive challenges to the Zoning Ordinance that Wayne raised in its brief, but nevertheless concluded that such challenges had not been preserved for appeal because they had not been raised before the Board. *Id.* at 27-32.

## II.     ISSUES PRESENTED[10]

The Board and Intervenors present similar, but not identical, issues for review. We have combined, summarized, and rearranged the issues presented in both consolidated appeals as follows:

> 1.     Whether the Board was bound by the interpretation of the Zoning Ordinance rendered by the Zoning Officer in the Zoning Letter. (Board's Br. at 7, IV(B); Intervenors' Br. at 5, IV(1).)
>
> 2.     Whether Wayne's proposed development of the Property constituted an abandonment of a legal

---

[10] Where, as here, the trial court takes no additional evidence, this Court's "review of a land development appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion." *Berner v. Montour Township*, 120 A.3d 433, 436 n.5 (Pa. Cmwlth. 2015). An abuse of discretion occurs when the governing body's findings are not supported by substantial evidence. *Gerryville Materials, Inc. v. Planning Commission of Lower Milford Township*, 74 A.3d 322, 325 n.5 (Pa. Cmwlth. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation omitted).

10

nonconforming use. (Board's Br. at 7, IV(A),(C); Intervenors' Br. at 5, IV(3).)

3.      Whether the trial court erred or abused its discretion in concluding that Wayne was not required to obtain a special exception for new occupancy. (Board's Br. at 26-30, VII(C); Intervenors' Br. at 5, IV(2).)

4.      Whether the Board appropriately rejected the Preliminary Plan due to noncompliance with the Zoning Ordinance and SALDO. (Board's Br. at 8, IV(D); Intervenors' Br. at 5, IV(4).)

5.      Whether the trial court erred or abuse its discretion in adopting Wayne's proposed findings of fact and conclusions of law to conclude that the Board acted in bad faith during the plan review process. (Board's Br. at 8, IV(E); Intervenors' Br. at 6, IV(6).)

6.      Whether the trial court erred or abused its discretion in considering and ruling upon Wayne's substantive challenge to the Zoning Ordinance, raised for the first time in the trial court. (Board's Br. at 8, IV(F); Intervenors' Br. at 5-6, IV(5).)

## III.   DISCUSSION

### A.   The Zoning Letter

First, Appellants argue that the trial court erred in concluding that the Zoning Officer's opinion that the Preliminary Plan complied with the Zoning Ordinance was binding on the Board. They accordingly argue that the Board properly denied Preliminary Plan approval based on an interpretation of the Zoning Ordinance that conflicted with that offered by the Zoning Officer. (Intervenors' Br. at 17-20; Board's Br. at 22-26; Trial Ct. Op. at 7-9; R.R. at 0340a-42a.) Wayne argues to the contrary that the Zoning Letter is a binding interpretation of the relevant provisions of the Zoning Ordinance and that the Board was not free to disagree with it in denying

11

Plan approval. We agree with Appellants that the Zoning Letter was not binding on the Board.

Section 614 of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 10614,[11] establishes the scope of authority of zoning officers as follows:

> For the administration of a zoning ordinance, a zoning officer, who shall not hold any elective office in the municipality, shall be appointed. The zoning officer shall meet qualifications established by the municipality and shall be able to demonstrate to the satisfaction of the municipality a working knowledge of municipal zoning. The zoning officer shall administer the zoning ordinance in accordance with its literal terms, and shall not have the power to permit any construction or any use or change of use which does not conform to the zoning ordinance. Zoning officers may be authorized to institute civil enforcement proceedings as a means of enforcement when acting within the scope of their employment.

53 P.S. § 10614.[12] Section 909.1 of the MPC, 53 P.S. § 10909.1,[13] further establishes the authority and jurisdiction of both governing bodies and zoning hearing boards. It provides, in pertinent part, as follows:

> (a) The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:

---

[11] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202. Section 614 was reenacted and amended by the Act of December 21, 1988, P.L. 1329.

[12] Section 280-130 of the Zoning Ordinance defines the responsibilities and authority of the Zoning Officer and provides that the administration of the Zoning Ordinance shall be "enforced by the Zoning Officer." (Zoning Ordinance, § 280-130.) The Zoning Officer has the explicit duty to (1) enforce the provisions of the Zoning Ordinance, (2) accept permit applications, and (3) issue permits. *Id.* § 280-130(A)-(C).

[13] Section 909.1 was added by the Act of December 21, 1988, P.L. 1329.

(1) Substantive challenges to the validity of any land use ordinance, except those brought before the governing body pursuant to sections 609.1[14] and 916.1(a)(2).[15]

. . . .

(3) Appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor, the issuance of any cease and desist order or the registration or refusal to register any nonconforming use, structure or lot.

. . . .

(8) Appeals from the zoning officer's determination under section 916.2.[16]

. . . .

53 P.S. § 10909.1(a).[17]

---

[14] 53 P.S. § 10609.1, *as amended and reenacted*. Section 609.1 was added by the Act of June 1, 1972, P.L. 333.

[15] 53 P.S. § 10916.1, *as amended*. Section 916.1 was added by the Act of December 21, 1988, P.L. 1329. It provides, in pertinent part, as follows:

> (a) A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge either:
> (1) to the zoning hearing board under section 909.1(a); or
> (2) to the governing body under section 909.1(b)(4), together with a request for a curative amendment under section 609.1.

53 P.S. § 10916.1.

[16] 53 P.S. § 10916.2, *as amended*. Section 916.2 was added by the Act of December 21, 1988, P.L. 1329.

[17] The MPC defines a "determination" as a "final action by an officer, body or agency charged with the administration of any land use ordinance or applications thereunder. . . ." Section 107(b) of the MPC, 53 P.S. § 10107(b).

In the land development process, "[s]ection 916.2 of the MPC[18] provides a mechanism whereby a landowner wishing to take advantage of an ordinance or map may foreclose challenge[s] to such ordinance or map by requesting a preliminary opinion from the zoning officer." *Friends of Lackawanna v. Dunmore Borough Zoning Hearing Board*, 227 A.3d 37, 42 (Pa. Cmwlth. 2020) (citation and quotation omitted). Section 916.2 states, in relevant part, as follows:

> In order not to unreasonably delay the time when a landowner may secure assurance that the ordinance or map under which he proposed to build is free from challenge, and recognizing that the procedure for preliminary approval of his development may be too cumbersome or may be unavailable, the landowner may advance the date from which time for any challenge to the ordinance or map will run under section 914.1[19] by the following procedure:
>
> > (1) The landowner may submit plans and other materials describing his proposed use or development to the zoning officer for a preliminary opinion as to their compliance with the applicable ordinances and

---

[18]Added by Section 99 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.2.

[19] Section 914.1, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10914.1. Section 914.1(a) provides as follows:

> (a) No person shall be allowed to file any proceeding with the board later than 30 days after an application for development, preliminary or final, has been approved by an appropriate municipal officer, agency or body if such proceeding is designed to secure reversal or to limit the approval in any manner unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given. . . . The failure of anyone other than the landowner to appeal . . . from an adverse decision by a zoning officer on a challenge to the validity of an ordinance or map pursuant to section 916.2 shall preclude an appeal from a final approval except in the case where the final submission substantially deviates from the approved tentative approval.

53 P.S. § 10914.1(a).

maps. Such plans and other materials shall not be required to meet the standards prescribed for preliminary, tentative or final approval or for the issuance of a building permit so long as they provide reasonable notice of the proposed use or development and a sufficient basis for a preliminary opinion as to its compliance.

(2) If the zoning officer's preliminary opinion is that the use or development complies with the ordinance or map, notice thereof shall be published once each week for two successive weeks in a newspaper of general circulation in the municipality. . . . The favorable preliminary approval under section 914.1 and the time therein specified for commencing a proceeding with the board shall run from the time when the second notice thereof has been published.

53 P.S. § 10916.2 (emphasis added).[20] Section 916.2 thus establishes a procedure to advance the date from which time for any challenge to the validity of an ordinance or map will run under Section 914.1 of the MPC. *MCM Ventures,* slip op. at 3-4. In an appeal of a zoning officer's determination under section 916.2, the only issue before the zoning board is the substantive validity of the zoning ordinance. *Susquehanna Rheems Holdings, LLC v. West Donegal Township Zoning Hearing Board* (Pa.

---

[20] Section 916.2(2) does not expressly indicate who is responsible for publishing notice of a preliminary opinion favorable to a landowner. However, we previously have at least suggested that it is the landowner's duty to comply with the procedural requirements of section 916.2(2). *See MCM Ventures, Ltd. v. Zoning Hearing Board of the Borough of Sewickley* (Pa. Cmwlth., No. 759 C.D. 2011, filed August 10, 2012), slip. op. at 10-11, 2012 WL 8679758 ("[A landowner may use [s]ection 916.2 to secure a preliminary decision that its tentative plans comply with a zoning ordinance . . . [.] [I]f properly advertised, this preliminary opinion will start the 30-day time period within which a substantive challenge must be made . . . . However, if *the landowner* does not fulfill the statutory requirements of [s]ection 916.2, the time period under [53 P.S. § 10914.1] will not begin to run.") (emphasis added). *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a) (Unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.)

Cmwlth., No. 1394 C.D. 2017, filed July 23, 2018), slip op. at 44-45, 48-49, 2018 WL 3520284.

In *Borough of Jenkintown v. Board of Commissioners of Abington Township*, 858 A.2d 136 (Pa. Cmwlth. 2004), we considered a zoning officer's role in making zoning determinations in the context of subdivision and land development proposals under Article V of the MPC. Therein we discussed the interplay between zoning determinations made by the zoning officer and zoning interpretations made by the governing body:

> We agree that both the [t]ownship's SALDO and the MPC contemplate that a party seeking to develop land in the [t]ownship must obtain from the zoning hearing board any waivers, variances, or special exceptions necessary under the [t]ownship's zoning ordinance before the [board] may grant approval of a land development application. However, before seeking such zoning relief, the SALDO, the zoning ordinance, and the appeal provisions of the MPC recognize that a developer generally needs to seek such relief or approval from a zoning hearing board only if the proposed use does not comply with the terms of the zoning ordinance. Zoning officers generally act in a gate-keeper-type capacity, sheltering zoning hearing boards from the duty to render preliminary decisions as to zoning compliance. Where a municipality has a zoning officer, the MPC provides for relief from such officer['s] determinations by its jurisdictional grant to zoning hearing boards.
>
> . . . .
>
> The drafters of the 1988 MPC amendments certainly recognized the fact that zoning officers make determinations both in the context of land development proposals under Article V of the MPC as well as other types of land use proposals, i.e., whether a use is permitted and whether zoning relief is necessary for a particular use. The MPC provides developers with the option of seeking to have all zoning issues resolved before submitting a land development application,

16

and having those issues decided preliminarily by a zoning officer, with the right to appeal his determinations to the zoning hearing board. Section 916.2, 53 P.S. § 10916.2. This section specifically states that its purpose is to provide developers with this option in order to ensure that the proposal is free from challenge at the development application phase.

However, while this provision vests zoning hearing boards with jurisdiction over such determinations of zoning officers, and while other provisions recognize that review of certain determinations of zoning officers arising in the course of the MPC's land development process rests with the governing body, the MPC is silent as to the method to challenge other determinations of a zoning officer that are made in the context of the land development review process before a governing body. . . . Regardless of the . . . MPC's silence as to the timing of challenges to the zoning aspect of land development approval, the Supreme Court has stated that issues involving zoning in land development should be resolved before a governing body may grant final approval.
. . . .

Presumably, in a case where a [board] does not agree with a zoning officer's conclusions, the [b]oard would deny the proposal, or grant approval with the condition that the developer must first seek whatever variances or special exceptions are required under the zoning ordinance. A landowner in such circumstances[ ] may appeal that determination to the courts of common pleas, as presently provided in the MPC. In reviewing such decisions, if a trial court determines that a governing body improperly interpreted the zoning ordinance, it may reverse the governing body's decision, as containing a fundamental defect, or it may reverse and remand, upon a finding that variances or special exceptions are required, viewing the governing body's decision as conditional, and resting ultimately on whether the developer obtains the required zoning relief.

*Borough of Jenkintown*, 858 A.2d at 140-41. *See also id.* at 142 ("The underlying notion is that, while a governing body may interpret zoning ordinances in the land

17

development review process, it has no authority to render final determinations resolving questions such as whether a use is permitted and whether relief from zoning ordinances is warranted or deserved.").

Thereafter, in *Friends of Lackawanna*, we considered the extent to which a land developer can seek preliminary zoning approval from a zoning officer under section 916.2 and, relatedly, how any such approvals apply to the governing body's final plan determination.  We concluded as follows:

> Section 916.2 of MPC allows a land developer to advance the date from which time for any challenge to the ordinance or map will run under [s]ection 914.1. Section 916.2 does not confer broad authority upon a zoning officer to issue an advisory determination on the validity of a land use proposal. A favorable preliminary opinion does not give the landowner a substantive land use approval.
>
> [A] [z]oning [o]fficer's preliminary opinion reduce[s] the period of time [the] [o]bjectors ha[ve] to challenge the substantive validity of [a] [z]oning [o]rdinance. Once [the] [o]bjectors abandon[ ] their substantive validity challenge to [a] [z]oning [o]rdinance, [a] [z]oning [hearing] [b]oard [is] deprived of jurisdiction to consider [ ] other [ ] issues raised by [the] [o]bjectors in [an] appeal.
>
> . . . .
>
> Section 909.1(a)(3) does not confer jurisdiction on a zoning hearing board to consider the merits of a preliminary opinion issued under [s]ection 916.2 of the MPC.  Simply, a preliminary opinion is not a "determination" for purposes of [s]ection 909.1(a)(3). When interpreting a statute, courts must give full effect to each provision of the statute if at all possible.   Section 909.1(a)(3) and [s]ection 909.1(a)(8) provide for different categories of appeals. To hold that [s]ection 909.1(a)(3) provides for an appeal from the zoning officer's preliminary opinion issued pursuant to [s]ection

18

916.2 would render the language of [s]ection 909.1(a)(8) as surplusage.

*Friends of Lackawanna*, 227 A.3d at 44-45. *See also MCM Ventures*, slip op. at 10-11.

We also have considered whether and to what extent a developer can pose specific zoning-related issues to a zoning officer for determination during the land development review process. In *North Codorus Township v. North Codorus Township Zoning Hearing Board*, 873 A.2d 845 (Pa. Cmwlth. 2005), we considered whether a zoning officer's oral opinion given in response to a question posed by a developer during the land development review process was a "determination" that could be appealed to and finally determined by a zoning hearing board pursuant to section 909.1(a)(3) of the MPC. The developer in *North Codorus Township* asked the township zoning officer during a telephone conversation whether a prior or the newly-enacted zoning ordinance would apply to the developer's proposed land development plan. *Id.* at 847. We concluded that the zoning officer's oral response indicating that the newly-enacted zoning ordinance would apply was a discreet, appealable "determination" that could be appealed to the zoning hearing board under section 909.1(a)(3).

The MPC therefore vests the authority to make final interpretations of zoning ordinances in zoning hearing boards and not in zoning officers. Wayne's contention that Zoning Officer is the "determining force" and "final arbiter" with the "final say" regarding whether a plan complies with the Zoning Ordinance simply is inaccurate. *See* Wayne's Br. at 10, 12. Rather, pursuant to the MPC and Zoning Ordinance, Zoning Officer may render (1) preliminary opinions on a plan's compliance with the Zoning Ordinance or (2) individual determinations on zoning issues during the plan development process, both of which may be appealed to the ZHB under

separate subsections of section 909.1. Although the MPC is not explicit on the procedure for challenging zoning officer determinations during the land development process, our decisions in *Borough of Jenkintown* and *Friends of Lackawanna* make clear that the zoning officer does not have broad, general authority to render preliminary advisory determinations on zoning compliance that bind the governing body.[21] To the extent that a developer is dissatisfied with how a governing body interprets a zoning ordinance in denying plan approval, the developer may appeal to the Court of Common Pleas, which is what occurred in this case.

In sum, where a developer requests an opinion on specific zoning issues that arise during the plan approval process, the zoning officer may render "determinations" that are appealable to the zoning hearing board under section 909.1(a)(3) of the MPC. But that is not what Wayne requested from the Zoning Officer here. Rather, Wayne requested a generic, preliminary determination regarding whether any particular relief was required under the Zoning Ordinance for the plan development process to continue. Further, to the extent that Wayne's Request Letter was submitted under section 916.2, a fact that it disclaims, any decision rendered by the Zoning Officer under that section is not a binding determination regarding comprehensive zoning compliance, especially where, as here, Wayne did not publish the determination to permit any objectors to challenge the Zoning Ordinance. Wayne's broad reliance on the Zoning Officer's general conclusions in the Zoning Letter thus was misplaced, particularly given the Zoning Officer's express indication that his opinion was not

---

[21] We note, however that the Township's SALDO, like that in *Borough of Jenkintown*, *see Borough of Jenkintown*, 858 A.2d at 137, provides that the Zoning Officer automatically shall review the "zoning considerations" in a preliminary plan application *after* it is accepted. *See* SALDO, § 255-14(D)(5) (within 30 days following acceptance of the preliminary plan application, the Zoning Officer shall (a) review the proposed zoning considerations in the application's submission, and (b) make recommendations to the Township engineer).

based on a thorough Zoning Ordinance review. In this circumstance, and as we indicated in *Borough of Jenkintown*, the Board may itself interpret the Zoning Ordinance as part of its determination of a preliminary land development application. The fact that it did so here in a way that contradicted the Zoning Officer's prior opinion does not, in itself, render the Board's interpretation erroneous. To the extent that the trial court concluded to the contrary, it erred.

## B. Abandonment

Appellants next argue that, by removing the buildings on the Property to construct a new Wawa store with gasoline sales, Wayne has abandoned the legal nonconforming use of gasoline sales. We disagree.

"A lawful nonconforming use establishes in the property owner a vested property right which cannot be abrogated or destroyed unless it is a nuisance, it is abandoned or it is extinguished by eminent domain." *Money v. Zoning Hearing Board of Haverford Township*, 755 A.2d 732, 736-37 (Pa. Cmwlth. 2000) (quoting *Keystone Outdoor Advertising v. Department of Transportation*, 687 A.2d 47, 51 (Pa. Cmwlth. 1996) (footnote omitted). *See also Tantlinger v. Zoning Hearing Board of South Union Township*, 519 A.2d 1071, 1073 (Pa. Cmwlth. 1987) ("Property owners have a constitutional right to continue a nonconforming use, unless the municipality proves that such a use has been abandoned.")

The party seeking to establish abandonment bears the burden of proving that a landowner has abandoned a nonconforming use. *Money*, 755 A.2d at 737 (citing *Latrobe Speedway, Inc. v. Zoning Hearing Board of Unity Township*, 720 A.2d 127 (Pa. 1998)). "To sustain its burden of proof, the [governing body] must show that (1) [a] [l]andowner intended to abandon the nonconforming use and (2) [a] [l]andowner actually abandoned the use consonant with his intention." *Id.* Nevertheless, "even

21

where a landowner has used the building within the prior designated time period, structural alterations to a building that are inconsistent with continuance of the nonconforming use may establish both intent to abandon and actual abandonment." *Id.* (citing *Smith v. Board of Zoning Appeals of City of Scranton*, 459 A.2d 1350 (Pa. Cmwlth. 1983)).

In arguing that Wayne has abandoned the nonconforming use of gasoline sales on the Property through its plans to demolish the current structures and build the Wawa store, Appellants rely chiefly on this Court's decision in *Tantlinger*, where we held that "the complete removal of a nonconforming structure, and replacement of it with a different type of structure, is an abandonment of the nonconforming use thus eliminated, and is inconsistent with the concept of continuing it." *Tantlinger*, 519 A.2d at 1074. In *Tantlinger*, the landowners owned two single-family residences on their property, one of which was a mobile home, a legal nonconforming use in the zoning district. The landowners' property also was smaller than the minimum lot area required by the zoning ordinance for properties with two residences. But, because both residences predated the enactment of the zoning ordinance, the mobile home was a "legal nonconforming use and the lot size of the two single-family dwellings constitute[d] a legal nonconformity as to area." *Id.* at 1072.

The landowners in *Tantlinger* sought to replace the mobile home with a modular home, which was a conforming, permitted use in the zoning district. *Id.* at 1072. The zoning hearing board concluded that the replacement was not a "valid expansion or continuation of the legal nonconforming use," and the trial court affirmed. *Id.* at 1072-73. On appeal to this Court, we concluded that the landowners' replacement of the mobile home with a conforming modular home constituted a replacement of a nonconforming use with a conforming use that remained in nonconformity as to lot

22

area. *Id.* at 1073. We rejected the landowners' argument that they merely sought to continue the prior nonconforming use, concluding that they instead had abandoned it:

> The intent to abandon a use may be shown by structural alterations to the building, inconsistent with continuance of the nonconforming use.
>
> Clearly, the complete removal of a nonconforming structure, and replacement of it with a different type of structure, is an abandonment of the nonconforming use thus eliminated, and is inconsistent with the concept of continuing it.

*Id.* at 1073 (citation omitted). We also rejected the landowners' contentions pursuant to the "natural expansion" doctrine:

> The law in Pennsylvania is well established[:] a municipality cannot prohibit the natural expansion of a nonconforming use which accommodates the dictates of business and modernization[.] The courts . . . have invariably applied this doctrine to commercial or rental housing property, to allow for an increase of business. Because the expansion requested in this case relates to a nonconforming private residence, the natural expansion doctrine is not applicable.

*Id.* (citation omitted). *See also Korngold v. Zoning Board of Adjustment of the City of Philadelphia*, 606 A.2d 1276 (Pa. Cmwlth. 1992) (destruction of nonconforming signage on top of landowners' building "extinguished" the nonconforming use of the sign; proof of abandonment not necessary); *Keystone Outdoor Advertising*, 687 A.2d at 50 (removal of damaged, nonconforming billboard and replacement with new billboard made of different materials not permitted where prior billboard was completely removed; right to reconstruct nonconforming billboard was extinguished as a matter of law).

We find *Tantlinger* to be inapposite to the instant case, chiefly because Wayne is not proposing to replace a nonconforming *structure* with a different kind of

23

*structure*. Rather, it is seeking to maintain a legal nonconforming use (gasoline sales) by building new structures that will add permitted retail sales and reduce the number of gasoline pumps. We thus find our decisions in *Money* and *Robertson v. Henry Clay Township Zoning Hearing Board*, 911 A.2d 207 (Pa. Cmwlth. 2006), to be more on point and controlling here. In *Money*, we considered whether a landowner's (Money) complete replacement of a dilapidated, nonconforming garage building that exceeded the dimensional limits of the Haverford Township Zoning Ordinance qualified as a valid continuation of a prior nonconforming use. Both the township and zoning hearing board in *Money* concluded that, because the new garage would completely replace the prior garage, Money was not in effect continuing a legal nonconforming use by building a new nonconforming structure. *Id.* at 735. The trial court affirmed, relying on *Tantlinger* to conclude that the replacement of "one nonconforming structure with another nonconforming structure" is prohibited. *Id.*

We reversed. Although we acknowledged that "structural alterations to a building that are inconsistent with continuance of the nonconforming use may establish both intent to abandon and actual abandonment," we nevertheless concluded that the new garage construction was the continuation of a legal nonconforming use and that the trial court therefore erred in finding *Tantlinger* applicable:

> Thus, contrary to the trial court's interpretation, *Tantlinger* does not prohibit the replacement of "one nonconforming structure with another nonconforming structure[.]" [R]ather, it prohibits only the replacement of a nonconforming structure with a different type of structure.
>
> Here, [Money] proposes to replace the old garage/chicken coop with a similar structure—a garage. Because both structures are nonconforming as to area, it cannot be said that [Money] is abandoning the nonconforming use by building the new garage. Unlike the situation in *Tantlinger*, [the

24

l]andowner's proposed replacement garage is a continuation, not an abandonment, of a nonconforming use.

Courts have permitted landowners to demolish nonconforming structures and replace them with new nonconforming structures. [*See Amoco Oil Co. v. Ross Township Zoning Hearing Board*, 426 A.2d 728 (Pa. Cmwlth. 1981); *Trettel v. Zoning Hearing Board of Harrison Township*, 658 A.2d 741 (Pa. 1995)].

We recognize that, where a building has become so dilapidated that complete reconstruction is necessary, a zoning ordinance may bar reconstruction in the interest of the public health, safety, morals or general welfare. However, such a restriction must be specifically set forth in the ordinance and, absent such regulations, a landowner seeking to continue a valid nonconforming use must be permitted to do so.

*Id.* at 738 (some internal citations and quotations omitted). Because we concluded that Money intended to continue the same legal nonconforming use—albeit with a new structure—we reversed the trial court and remanded for the issuance of a building permit. *Id.* at 739.

Similarly, in *Robertson*, we considered whether a landowner's (Robertson) replacement of a nonconforming camping trailer with a block and frame structure at the same campsite and for the same camping purpose constituted a valid continuation of a preexisting nonconforming use. *Id.* at 209-10. The Henry Clay Township zoning officer and zoning hearing board concluded that the new structure, because it differed from the camper in size, construction materials, and mobility, did not constitute a valid continuation of a prior nonconforming use. *Id.* The trial court affirmed, concluding that "Robertson abandoned the pre[ ]existing nonconforming use as a camp, desired a permanent structure on the property and, when denied a permit therefore, proceeded to construct a 'building,' not a 'trailer' . . . ." *Id.* at 210.

25

On appeal to this Court, we reversed, in part, concluding that Robertson had continued a legal nonconforming use by building the new camping structure. We noted that, because the activities for which Robertson had used the camping trailer and would use the new structure were not explicitly allowed in the zoning district, she had to either establish that the camping use was an unabandoned preexisting nonconforming use or obtain a variance, which she did not seek. *Id.* at 211. We concluded that the township had failed to prove that Robertson intended to and did abandon "the long-standing use" of the property for "family camping and recreation on the weekends and vacations," and rejected the trial court's reliance on *Tantlinger* for the proposition that "simply removing the prior camper and replacing it with a wood frame structure constituted abandonment of the prior use." *Id.* at 212. Rather, as we had done in *Money*, we again clarified what our decision in *Tantlinger* did, and did not, mean:

> We stated [in *Tantlinger*] that the complete removal of a nonconforming use and replacement with a conforming use constitutes an abandonment of the nonconformity and, inasmuch as the lot's size could not legally accommodate both residences, the addition of the modular home would violate the ordinance. In the present case, Robertson does not seek to establish a new use. Rather, she seeks only to replace the old camper with a structure equally well suited to her continued use of the property as her family used it during the preceding fifty years. Robertson is entitled to continue this use.

> Notably, Robertson's protected use is integrally tied to and dependent upon the placement of a structure functionally equivalent to the prior camper for the purpose of the protected use. Indeed, the concept of use, as we understand it in the law of zoning, routinely implicates both the activity to be conducted on the property and the type of structure or improvements suitable to accommodate that activity. The [t]ownship cannot thwart or unreasonably infringe on her

26

right to continue the pre[ ]existing use on the ground that the structure necessary to that use is not allowed. Moreover, we can perceive of no rational basis for limiting Robertson to only replacement of a camper rather than allowing the functional equivalent thereof.

We recognize that, in general, a municipality may direct in its ordinance that where a dimensionally nonconforming structure is razed, rebuilding must conform to the existing dimensional regulations. However, even where such a provision exists, dimensional nonconformity must be accommodated if it is necessary to avoid extinguishment of the pre[ ]existing nonconforming use. Under such a circumstance, the necessary variances must issue in order to avoid a taking.

*Id.* at 212-13 (citations omitted). We accordingly reversed the trial court's determination that Robertson was not continuing a legal nonconforming use and remanded for the issuance of necessary variances, subject to any reasonable conditions and safeguards that may be imposed by the zoning hearing board. *Id.* at 213.

Here, Wayne proposes to continue the nonconforming use of outside gasoline sales on a single, consolidated parcel. To do so, it plans to remove the existing structures and construct a Wawa convenience store housing permitted retail sales with a reduced number of outside gasoline pumps. Although Appellants attempt to construe Wayne's proposed changes to the Property in broad terms, the very narrow question presented deals only with gasoline sales as the continuation of a legal nonconforming use. Neither *Tantlinger* nor *Korngold* apply in circumstances where, as here, a property owner intends to remove structures that *house* a nonconforming use specifically to continue that use in new structures that will modernize, and decrease the extent of, the nonconformity. In those circumstances, *Money* and *Robertson* squarely apply to permit the continuation of the use. Accordingly, we conclude that the trial court did not err in

concluding that Wayne did not abandon the legal nonconforming use of gasoline sales on the Property.

## C.     Change in Occupancy

Appellants next argue that, even if Wayne has not abandoned the legal nonconforming use of gasoline sales, the trial court nevertheless erred in concluding that Wayne was not required to obtain a special exception to continue the nonconforming use pursuant to section 280-101.A(1) of the Zoning Ordinance. We disagree.

Section 280-101.A(1) governs "[n]onconforming uses, structures and lots" and provides, in pertinent part, as follows:

> A. Nonconforming uses. Except as hereinafter provided in this article, the lawful use of a building or structure or any land or premises existing at the time of the effective date of this chapter or any subsequent amendment or at the time of a change in the Zoning Map may be continued, although such use does not conform to the provisions hereof or of any subsequent amendment. **Any change in nonresidential occupancy shall be deemed to be a change of use for purposes of § 280-101[.]A(1).**
>
> (1) A nonconforming use may be changed to another nonconforming use by grant of special exception only upon a determination by the Zoning Hearing Board, after public hearing, that the proposed new use will be no more detrimental to its neighborhood and surroundings than is the use it is to replace. In determining relative detriment, the [ZHB] shall take into consideration, among other things, traffic generated; nuisance characteristics, such as emission of noise, dust and smoke, fire hazards; and hours and manner of operation.

(Zoning Ordinance, § 280-101.A(1); R.R. at 0286a) (emphasis provided).[22] Under Pennsylvania law, an ordinance that permits a change from one nonconforming use to another that is "no more detrimental" to the neighborhood than the prior use "in effect permits a change in the use, by special exception." *Blancett-Maddock v. City of Pittsburgh Zoning Board of Adjustment*, 640 A.2d 498, 500 (Pa. Cmwlth. 1994) (citing *Martire v. Zoning Board of Adjustment, City of Pittsburgh*, 459 A.2d 1324 (Pa. Cmwlth. 1983)). These zoning limitations are reasonable restrictions imposed on a change from one nonconforming use to another, and zoning provisions permitting such a change "must be construed strictly so as to restrict non[ ]conforming uses closely." *Fiechter v. Zoning Hearing Board of Pennsbury Township*, 458 A.2d 616, 618 (Pa. Cmwlth. 1983) (citing *Hauser v. Borough of Catasauqua Zoning Hearing Board*, 341 A.2d 566, 569 (Pa. Cmwlth. 1975)).

First, we need not determine whether removal of the current businesses on the Property and the construction of a Wawa store will result in a change of occupancy. As the trial court concluded and as Wayne argues here, even assuming a change in occupancy would occur, we conclude that section 280-101.A(1) may not be used by the Board in this instance to eliminate a legal preexisting nonconforming use

---

[22] Both section 280-101.A and the definition of "nonconforming use" in section 280-4.B of the Zoning Ordinance were amended in 1997 by Ordinance No. 97-12, which is not included in the record and does not appear to be available online. "Nonconforming use" currently is defined as follows:

> [a] use of land or of a building lawfully existing at the time this chapter or subsequent amendments hereto became effective which does not conform to use requirements of the district in which it is located. Any change in nonresidential occupancy will be considered to be a change of nonconforming use under this chapter, specifically § 280-101[.]A.

(Zoning Ordinance, § 280-4.B; R.R. at 0286a.) The term "nonresidential occupancy" is not defined in the Zoning Ordinance.

that is constitutionally protected and runs with the land. We begin by reiterating and reemphasizing that the nonconforming "use" at issue here is gasoline sales. Although Appellants throughout their briefs attempt to re-cast the issue as a significant expansion of the current use of the Property, we are not here considering all of the changes to the Property that Wayne proposes. Rather, we consider only whether Wayne's proposed continuation (and reduction) of gasoline sales on the Property is a valid continuation of a legal nonconforming use that is subject to the special exception requirements in section 280-101.A(1).

Interpreted according to its plain language, section 280-101.A(1) permits a *change* from one nonconforming use to another by grant of special exception only if the ZHB determines that the "proposed new use" will be no more detrimental to the neighborhood and surroundings "than is the use it is to replace." Zoning Ordinance, § 280-101.A(1). Here, and unlike the cases cited by Appellants, Wayne is not seeking to change from one nonconforming use to another nonconforming use or to add an additional nonconforming use to its current one. *See, e.g.*, *Hanna v. Board of Adjustment of the Borough of Forest Hills*, 183 A.2d 539, 541 543 (Pa. 1962) (property owner seeking to change from one nonconforming use (used car business) to another nonconforming use (gasoline station)*; Fiechter*, 458 A.2d at 617 (property owner seeking to add an additional nonconforming convenience store to its preexisting nonconforming service station). Nor is it seeking to expand the scope of a nonconforming use under the "natural expansion" doctrine. Rather, Wayne seeks to continue (and reduce) outside gasoline sales in conjunction with the addition of a (permitted) retail convenience store.

Section 280-101.A of the Zoning Ordinance expressly provides that nonconforming uses may continue notwithstanding the fact they do not comply with

any subsequent amendments to the Zoning Ordinance. If the last sentence of section 280-101.A, which was enacted long after gasoline sales began on the Property, applied to Wayne's proposed development, it would deem Wayne's continued, reduced gasoline sales a "new use" that could continue *only if* Wayne obtained a special exception under the standards set forth in section 280-101.A(1). In fact, it would require a special exception every time the technical occupancy of the Property changed, no matter whether the same legal nonconforming use continued unchanged and unexpanded.[23] Thus, the precise question before the Court is whether the last sentence of section 280-101.A, which was added to the Zoning Ordinance in 1997, may automatically convert any preexisting nonconforming use in the Township into a "new use" subject to special exception approval every time any change in nonresidential occupancy occurs.

---

[23] We noted in *Hanna*, a case relied upon by Appellants:

> A basic purpose of zoning is to ensure an orderly physical development of the city, borough, township or other community by confining particular uses of property to certain defined areas. With such a purpose nonconforming uses are inconsistent. The continuance of nonconforming uses under zoning ordinances is countenanced because it avoids the imposition of a hardship upon the property owner and because the refusal of the continuance of a nonconforming use would be of doubtful constitutionality. Even though zoning ordinances permit the continuance of nonconforming uses, it is the policy of the law to closely restrict such nonconforming uses and to strictly construe provisions in zoning ordinances which provide for the continuance of nonconforming uses.
>
> . . . .
>
> The nonconforming use which is within the orbit of protection of the law and the [c]onstitution is the nonconforming use which exists at the time of the passage of the zoning ordinance or the change in a use district under a zoning ordinance, not a new or different nonconforming use.

*Hanna*, 183 A.2d at 543-44 (citation omitted).

31

We conclude that it may not do so. Such an application, which is based on a technical, non-use-related factor that is not related to the land but, instead, to its occupant, impermissibly would deprive a landowner of a constitutionally protected right to continue a legal nonconformance. *See, e.g.*, *DoMiJo, LLC v. Treesmiths Utility Arborists*, 41 A.3d 967, 969-70 (Pa. Cmwlth. 2012) (landowner could continue legal nonconforming use notwithstanding the failure to register the use in accordance with the zoning ordinance; "Because the right to continue a nonconforming use arises from constitutional protections and not from regulatory provisions, the right cannot be lost in this way."). Thus, even assuming Wayne's land development plan would involve a change in occupancy, the application of section 280-101.A to the plan without any actual *change* in use would violate Wayne's protected right under both Pennsylvania law and the Zoning Ordinance to continue the legal nonconforming use of gasoline sales in accordance with the Zoning Ordinance as it existed when that nonconforming use first was established. We therefore affirm the trial court on this issue.[24]

### D.    Compliance with the Zoning Ordinance and SALDO

Appellants next argue that the trial court erred in concluding that the Board could not reject Wayne's Preliminary Plan application due to its alleged noncompliance with certain provisions of the Zoning Ordinance and SALDO.

### 1.    Rear Yard Setback

Appellants first argue that Wayne did not comply with the rear yard setback requirements applicable to the Plan, and therefore the Board appropriately denied approval on this basis. In its Denial Letter, the Board stated that the Plan did

---

[24] We hasten to point out that our decision in this regard is not, and should not be construed to be, an invalidation of any portion of the Zoning Ordinance. We conclude only that the last sentence of section 280-101.A may not be applied to a legal nonconforming use in existence prior to its enactment based *solely* on a change in nonresidential occupancy unaccompanied by an actual change of, expansion of, or addition to, the nonconforming use.

not comply with sections 280-4.B and 280-52.E of the Zoning Ordinance "regarding encroachment into the rear yard setback requirements for a corner lot." (R.R. at 0323a.) Wayne argues that this setback issue was not raised during the land development process until counsel for Intervenors brought the issue to the Board's attention.

Sections 280-4.B and 280-52.E of the Zoning Ordinance provide the rear yard setback requirements for buildings on corner lots. Section 280-52.E requires that every lot in the C-2 District have a rear yard "not less than 35 feet in depth or not less than 35% of the lot depth, whichever is the greater." (Zoning Ordinance, § 280-52.E; R.R. at 0294a.) "Rear Yard" is defined in section 280-4.B of the Zoning Ordinance as the "minimum open space extending the full width of a lot, required between the rear line of the lot and the principal building on the lot, exclusive of cornices, eaves, gutters and chimneys projecting not more than two feet from the building." (*Id.* § 280-4.B; R.R. at 0290a.) Section 280-4.B imposes specific yard requirements on corner lots:

> In the case of a corner lot having frontages on two streets, there shall be provided two front yards, one along each street line as described under [s]ubsection [(1)] above, one side yard as described under [s]ubsection [(2),] and one rear yard as described under [s]ubsection [(3)]. **The rear lot line shall be designated as that lot line towards which the rear of the principal building is oriented.**

*Id.* (emphasis provided). The trial court addressed this issue as follows:

> Appellants allege[ ] that the [Zoning Ordinance] requires that the rear lot line shall be oriented towards the rear of where the building is oriented as this is a corner lot. The planned land development has the entry into the building on all sides and the rear of the building is presently oriented to the opposite of the residential neighbors, Intervenors. Wayne presented evidence that the required rear yard setback is 84.7 feet as that is 35% [of] the lot depth and that the current use of the land is nonconforming to that setback requirement. The proposed

33

land development plan [purports] to bring the rear setback into conformity by having the rear yard [setback] at 86.3 feet, just under [two] feet beyond the minimum . . . . [The trial court] in issuing its determination relied on the record below, which did not contain any evidence to the contrary . . . .

(Trial Ct. Op. at 16-17; R.R. at 0349a-50a.)

The Board in its brief devotes little more than a paragraph to this issue with only a blanket conclusion that the rear yard setback is in excess of 100 feet, with no citations to the Zoning Ordinance or record for how that distance was calculated. (Board's Br. at 32.) The Board also did not raise the issue to Wayne during the preliminary approval process, and further did not specify on the record at the June 19, 2019 hearing or in its Denial Letter *how* the Preliminary Plan did not comply with the rear yard setback requirements of the Zoning Ordinance. Intervenors likewise did not present any evidence at the hearing before the Board regarding why the setback requirements were not met. Rather, they submitted a letter to the Board indicating that the front of the Wawa building should be considered to face Aberdeen Avenue, which would make the rear of the Wawa building face east and the rear yard setback noncompliant. (R.R. at 0263a.) Although that interpretation of Wayne's Preliminary Plan could be plausible, the Board did not have before it, and did not refer to, substantial record evidence from which to conclude that only the western side of the building could be construed as the front of the Wawa building. Accordingly, we are constrained to agree with the trial court that the Board abused its discretion in finding that Wayne's Preliminary Plan did not comply with the rear yard setback requirements. We accordingly affirm the trial court on this issue.[25]

---

[25] We acknowledge that, in response to public comment on the Board's motion to deny Wayne's Preliminary Plan application, Peter Karakelian suggested that the Wawa building would face "east and west." (R.R. at 0095a.) However, such a comment is not "substantial" evidence **(Footnote continued on next page…)**

## 2.    Steep Slopes

The Board next contends,[26] as it indicated in its Denial Letter, that Wayne's Preliminary Plan did not comply with section 280-112.J of the Zoning Ordinance, which provides for single-lot exceptions to the "steep slope"[27] use limitations found in section 280-112.D of the Zoning Ordinance.[28]  Section 280-112.D delineates a limited number of uses that are permitted on "steep slope" areas but does not permit parking.  (Zoning Ordinance, § 280-112.D.)  Section 280-112.J, however, provides that "single lots existing at the date of the addition of this section to this chapter and which are not of sufficient size to be subdivided because of the zoning district lot size limitation are exempted from the provisions of this section except for Subsections B, C, E and H."  *Id.* § 280-112.J.

The Township's engineer addressed the steep slope requirements in a letter to Wayne on March 20, 2019.  (R.R. at 0188a).  In the letter, the engineer advised that "it appears" that the section 280-112.J exception applied and further indicated that Wayne "must provide dimensional information that the lots are in [conformity] with this section."  *Id.* at 0189a. Wayne's engineer replied on April 30, 2019, advising that

---

supporting a finding that the rear setback requirements of the Zoning Ordinance were not satisfied in accordance with the Plan as it had been submitted to the Township's engineer throughout the preliminary approval process.

[26] Intervenors do not brief this issue.

[27] "Steep slope" is defined under the Zoning Ordinance as "[l]and whose slope (surfaces at an angle to the plane of the horizon) is 20% or more (a vertical difference of two feet or more per 10 feet of the horizontal distance)."  (Zoning Ordinance, § 280-4.B)

[28] Neither section 280-112.J nor section 280-112.D of the Zoning Ordinance are included in the Reproduced Record.  We obtained those sections from the version of the Zoning Ordinance posted on Radnor Township's website, available at https://www.radnor.com/government/boards-and-commissions/zoning-hearing-board (last visited August 7, 2023).

Wayne would comply with the Township's request and that "[t]he [P]lan will be revised to include dimensions which show that the two (2) existing lots are non[ ]conf[o]rming and cannot be further subdivided." *Id.* at 0242a. Thus, nowhere in the record is there substantial evidence that Wayne's Preliminary Plan did not or would not comply with the steep slope provisions of the Zoning Ordinance. Rather, the evidence indicates that the subject lots are exempt under section 280-112.J and that Wayne's proposal to submit a revised Plan showing that the lots cannot be subdivided would bring the Plan into compliance with the Zoning Ordinance. The Board therefore did not have substantial evidence before it to deny approval on this ground.

The Board argues that Wayne's "promise to comply" was insufficient and any conditional approval that it might have received on that basis would be invalid. The Board relies on two cases to support that conclusion, both of which are inapposite. *Edgmont Township v. Springton Lake Montessori School, Inc.*, 622 A.2d 418 (Pa. Cmwlth. 1993), and *Appeal of Baird*, 537 A.2d 976 (Pa. Cmwlth. 1988), both dealt with whether zoning hearing boards properly granted special exceptions without the applicants first presenting evidence of their actual compliance with the applicable special exception requirements of the zoning ordinances. In both cases, we held that mere "promises" to present in the future sufficient evidence of actual compliance with the zoning ordinance would not support a grant of a special exception. In addition, we concluded that zoning hearing boards may not cure noncompliance by granting a special exception on condition that the applicant comply in the future. *See Edgmont Township*, 622 A.2d at 419-420; *Appeal of Baird*, 537 A.2d at 977-78.

Here, however, we are not considering the propriety of the grant of a special exception. Rather, we consider whether the governing body may grant preliminary approval on condition that certain land development or zoning

36

requirements be satisfied prior to final plan consideration and approval. Both the MPC and our caselaw clearly contemplate the granting of conditional, preliminary approval of a plan. Indeed, that precisely is why land development law distinguishes between preliminary and final approval. *Whitehall Manor, Inc. v. Planning Commission of the City of Allentown*, 79 A.3d 720, 734-35 (Pa. Cmwlth. 2013). *See also* Sections 503(1) and 508(4) of the MPC, 53 P.S. §§ 10503(1), 10508(4); Robert S. Ryan, Pennsylvania Zoning Law and Practice §§ 11.2.1, 11.2.3) (2007 ed. & Supp. 2023). Because the Board was without substantial evidence to deny plan approval on the ground that Wayne's Preliminary Plan did not comply with the steep slope requirements of the Zoning Ordinance, we affirm the trial court's conclusion that the Board abused its discretion in this regard.

### 3.    SALDO Compliance

The Board[29] next argues that it properly denied Wayne's Preliminary Plan based on nine provisions of the SALDO with which the Plan allegedly did not comply. The Board identified these same items of noncompliance in its Denial Letter. (R.R. at 0324a.) We agree with Wayne that none of the cited instances of alleged noncompliance with the SALDO justified Preliminary Plan disapproval because they are not supported by substantial evidence in the record.

"Section 508 of the MPC provides the procedure whereby the governing body or planning agency of a township shall review and act upon a subdivision and land development application." *Delchester Developers, L.P. v. London Grove Township Board of Supervisors*, 161 A.3d 1106, 1108 (Pa. Cmwlth. 2017) (citing 53

---

[29] Although Intervenors argue in their brief that the Board had sufficient grounds to deny Preliminary Plan approval based on the Plan's noncompliance with certain sections of the SALDO, *see* Intervenors' Br. at 27, they do not identify any specific sections of the SALDO or develop any argument on this issue.

37

P.S. § 10508). If the applicant's plan "complies with all of the objective provisions of the applicable [SALDO] as well as all other applicable regulations, the plan must be approved by the reviewing body." *Id.* at 1108 (citing *Herr v. Lancaster County Planning Commission*, 625 A.2d 164, 169 (Pa. Cmwlth. 1993)). Pursuant to section 508(2) of the MPC, 53 P.S. § 10508(2), when rejecting a subdivision and land development plan, the reviewing body must specify the defect found, describe the requirements that have not been met, and cite to the relevant provisions of the statute or ordinance relied upon as the basis for the denial. 161 A.3d at 1009 (citing 53 P.S. § 10508(2) and *Herr*, 625 A.2d at 169).

When the reviewing body's decision "complies with section 508(2) of the MPC, then rejection of the plan will stand if even one of the reasons for denial is supported by substantial evidence." *Id.* (citing *Herr*, 625 A.2d at 169). This Court reviews the findings of noncompliance made by a reviewing body below to determine whether they are supported by substantial evidence. *Herr*, 625 A.2d at 169. In reviewing the adequacy of a reviewing body's decision denying plan approval, our inquiry focuses on whether the decision "is sufficient to permit the applicant to understand the specific nature of the deficiency identified, so as to permit the applicant to take whatever further action it deems necessary or appropriate." *Kassouf v. Township of Scott*, 883 A.2d 463, 474 (Pa. 2005).

Our review of the trial court's opinion (R.R. at 0352a-57a), the testimony and documents introduced at the Preliminary Plan approval hearing, *id.* at 0046a-81a, and Wayne's responses to the Board engineer's correspondence letters regarding SALDO compliance, *see, e.g., id.* at 0242a, indicates that all of the alleged SALDO violations cited by the Board are technical, non-substantive violations that are not supported by substantial evidence or reasoning in the record. Although the Board

included in its Denial Letter generic references to specific SALDO provisions, it did not make any findings or set forth any explanations for why each of the alleged violations justified denying Plan approval, why it would not grant tentative approval conditioned on future SALDO compliance, or why any requested waivers, which in some instances were suggested by the Board, were not granted.[30] As the trial court concluded and as Wayne points out in its brief, Wayne presented in its response letters and at the approval hearing substantial evidence showing that it fairly addressed the noncompliance issues identified by the Board. Because we cannot find in the record substantial evidence supporting the Board's conclusions that Wayne's attempts at compliance were insufficient, and for the reasons set forth in the trial court's opinion and in Wayne's brief, we conclude that the Board's SALDO-related reasons for

---

[30] For example, in its Denial Letter, the Board indicated that the Preliminary Plan did not comply, in part, with section 255.20.B(1) of the SALDO because it did not show "significant man[-]made features within 500 feet of the site." (R.R. at 0324a.) Prior to the hearing on Plan approval, the Board's engineer advised Wayne's engineer of the need to comply with section 255.20.B(1)(n), noted that Wayne had submitted an aerial photograph to show information required by that section, and indicated that "[i]f all the required information is not provided, the applicant must request a waiver from this requirement." *Id*. at 0243a. Wayne responded:

> A waiver is requested from this section of the code. It is our belief that the extent of the survey conducted is sufficient to support the application. The plan does provide all of the required information per survey for and directly surrounding all areas of proposed improvements. The plan set also includes an aerial plan on which the proposed improvements are superimposed. The Aerial Plan includes all significant features within 500 feet of the site.

*Id*. At the Plan approval hearing, Wayne's engineer testified that Wayne included with its application an aerial photograph that "generally addresses" the requirements of section 255-20.B(1)(n). *Id*. at 0048-49. The engineer also introduced a supplemental aerial survey to show additional information about the structures within 500 feet. *Id*. at 0048-51; 0254a. The Board provided no explanation at the hearing or in its Denial Letter regarding how Wayne's submissions still did not comply with section 255.20.B(1)(n) or why a waiver was not granted.

denying Preliminary Plan approval are not supported by substantial evidence in the record.[31]

The lack of substantial evidence supporting the Board's decision in this regard is exacerbated by the fact that the Board's Denial Letter does not comply with section 508(2) of the MPC. Although this specific issue was not raised on appeal, we note the deficiency here because it reinforces our conclusion that the record is bereft of substantial evidence supporting the SALDO-related findings in the Denial Letter. Although the Board in its brief to this Court provides additional reasoning and argument regarding why each of the alleged SALDO violations supported Plan denial, those justifications were not provided in the Denial Letter. Given the extensive correspondence between Wayne's engineer and the Township's engineer prior to the approval hearing and the indications therein that Wayne either would or could bring the Plan into compliance or receive the necessary waivers prior to final plan approval, the generic citations to SALDO provisions in the Denial Letter failed to adequately advise Wayne of those alleged deficiencies.

We therefore affirm the trial court's decision in this regard that the Board erred and abused its discretion in denying Preliminary Plan approval based on alleged violations of the SALDO.

### E. Adoption of Proposed Findings and Conclusions Regarding Bad Faith

Appellants next argue that the trial court erred and abused its discretion by incorporating into its decision Wayne's proposed findings of fact and conclusions

---

[31] We emphasize that our decision in this regard applies only to the Board's denial of *preliminary* plan approval and not final plan approval. The trial court was careful to point out, and we do again here, that the Board may impose conditions on Preliminary Plan approval that require specific compliance with the SALDO prior to obtaining final approval.

of law, more specifically those findings and conclusions that the Board acted in bad faith during the preliminary plan approval process.[32]

We conclude that, to the extent that the trial court determined that the Township acted in bad faith, we need not address this issue on appeal. We already have concluded that Wayne may continue its legal nonconforming use of gasoline sales on the Property and that the Township's proffered Zoning Ordinance and SALDO violations may not, in this instance, be utilized to justify denying Preliminary Plan approval. Because we affirm the trial court to the extent that it held that Wayne's Preliminary Plan must be accepted by the Board subject to sufficient compliance with all other requirements of the Zoning Ordinance and SALDO, the issue of bad faith is moot, and we decline to consider it.

### F. Substantive Challenge to the Zoning Ordinance

Finally, Appellants contend that the trial court erred to the extent that it considered, and made any findings and conclusions regarding, any substantive challenges to the Zoning Ordinance because such challenges were never raised before the Board. We agree.

As Appellants point out, section 916.1(a) of the MPC requires that substantive validity challenges to a zoning ordinance be submitted to either the zoning

---

[32] The good faith standard applicable to the land development plan review process is well established:

> A municipality has a legal obligation to proceed in good faith in reviewing and processing development plans. The duty of good faith includes discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion.

*Highway Materials, Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539, 544 (Pa. Cmwlth. 2009) (quoting *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777, 798 (Pa. Cmwlth. 1977)).

41

hearing board or governing body. If it is submitted to the governing body, it must be accompanied by a proposed curative amendment. 53 P.S. § 10916.1(a). This is the exclusive method for raising substantive challenges to zoning ordinances. *Urey v. Zoning Hearing Board of City of Hermitage*, 806 A.2d 502, 506 (Pa. Cmwlth. 2002). The trial court concluded as follows:

> A thorough reading of the [l]and [u]se [a]ppeal filed by Wayne demonstrates that no substantive challenge was filed relating to the Zoning [Ordinance]. Wayne asserted in its brief that **if gasoline sales could not take place in the front of the building then there was a *de jure* exclusion**, as more fully examined below. This was set forth in their argument and not specifically enumerated as a reason for the filing of the [l]and [u]se [a]ppeal.
>
> As such there was not a perfected substantive challenge to the [Zoning Ordinance] and this appeal issue is moot.

(Trial Ct. Op. at 28; R.R. at 0361a) (emphasis added). The trial court nevertheless went on to discuss the question of whether the Zoning Ordinance was *de jure* exclusionary, which would involve a substantive challenge. *Id.* at 28-31. Because any challenges to the substantive validity of the Zoning Ordinance were not properly preserved before the Board and therefore are waived on appeal, the trial court erred to the extent that it made any findings or conclusions in this regard.[33]

Further, even if this issue was not waived, we have concluded herein that the legal nonconforming use of gasoline sales may continue on the Property. Given that conclusion, and as Wayne appears to have acknowledged before the trial court, we would not need to consider whether the Zoning Ordinance is *de facto* or *de jure* exclusionary because those issues are now moot.

_____

[33] Wayne appears to have abandoned this issue as it has not briefed it in this Court.

# IV. CONCLUSION

In sum, we conclude that the trial court erred to the extent that it concluded that the Zoning Letter was binding on the Board and that Wayne's reliance thereon was justified. We further conclude that the trial court erred to the extent that it made any findings or conclusions regarding whether the Zoning Ordinance was impermissibly exclusionary. We nevertheless affirm the trial court's January 30, 2020 order to the extent that it sustained Wayne's land use appeal, approved Wayne's Preliminary Plan, and directed final plan approval conditioned on Wayne's compliance with all pertinent SALDO requirements.[34] We accordingly remand the matter to the trial court for remand to the Board for further proceedings.

_____
PATRICIA A. McCULLOUGH, Judge

---

[34] Because we conclude that outdoor gasoline sales are a legal nonconforming use that Wayne may continue, we need not address Wayne's alternative arguments that gasoline sales are a permitted or accessory use under the Zoning Ordinance. *See* Wayne Br. at 25-33.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Property Acquisition, Inc. : **CASES CONSOLIDATED**
:
v. : No. 254 C.D. 2020
:
Board of Commissioners of the :
Township of Radnor and Bradley :
Mortensen, Susan Stern, Warren Ayres :
and Susan Ayres :
:
Appeal of: Radnor Township Board :
of Commissioners :
:
Wayne Property Acquisition, Inc. :
:
v. : No. 279 C.D. 2020
:
Board of Commissioners of Radnor :
Township and Bradley Mortensen, :
Susan Stern, Warren Ayres and :
Susan Ayres :
:
Appeal of: Bradley Mortensen, :
Susan Stern, Warren Ayres and :
Susan Ayres :

## _ORDER_

AND NOW, this 7th day of August, 2023, the January 30, 2020 order of the Court of Common Pleas of Delaware County (trial court) hereby is AFFIRMED, in part, and REVERSED, in part, as set forth in the foregoing Memorandum Opinion. This case is REMANDED to the trial court with instructions to remand to the Board of Commissioners of Radnor Township for further proceedings consistent herewith.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge